[Cite as *State v. Moore*, 2016-Ohio-7226.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104082**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MACEO MOORE

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-09-520589-A

**BEFORE:** Keough, P.J., McCormack, J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** October 6, 2016

**ATTORNEY FOR APPELLANT**

Paul A. Mancino Jr.
Mancino, Mancino & Mancino
75 Public Square Building, Suite 1016
Cleveland, Ohio 44113-2098


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Mary McGrath
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, P.J.:

{¶1} Defendant-appellant, Maceo Moore, appeals from the trial court's judgment denying his motion to withdraw his guilty plea. Finding no merit to the appeal, we affirm.

## I. Background

{¶2} In September 2009, Moore pleaded guilty in this case to an amended robbery count, and an amended count of having weapons while under disability. He was sentenced to one year incarceration on each count, concurrent with each other and with a sentence imposed in Cuyahoga C.P. No. CR-09-521907.

{¶3} In February 2013, Moore was indicted in Cuyahoga C.P. No. CR-13-570919 for failure to comply with the order or signal of a police officer. During the pretrial phase of the case, he was arrested and charged in federal court with conspiracy to distribute heroin, distribution of heroin, possession with intent to distribute heroin, and use of a telephone to facilitate drug trafficking. *U.S. v. Moore*, N.D.Ohio No. 1:13CR345, 2014 U.S. Dist. LEXIS 108080 (Aug. 5, 2014).

{¶4} In February 2014, after being advised that he would likely be categorized as a career offender for sentencing purposes, Moore pleaded guilty in the federal case to conspiracy to distribute heroin. *Id.* A month later, in March 2014, Moore pleaded guilty in Cuyahoga C.P. No. CR-13-570919 to failure to comply with the order or signal of a police officer; the trial court subsequently sentenced him to nine months incarceration.

{¶5} In June 2014, prior to sentencing in the federal case, Moore moved in that case to withdraw his guilty plea, arguing, among other things, that he was innocent of the charges. In August 2014, the federal court issued its opinion denying Moore's motion. Because he was considered a career offender, the federal court sentenced him to 17 and 1/2 years incarceration, instead of the 42-52 month sentence that Moore would have been eligible for if he were not a career offender.

{¶6} In October 2014, five years after his plea was entered in this case, Moore filed a motion to withdraw his guilty plea, arguing that he had recently obtained information demonstrating that he is innocent of the offenses to which he pleaded guilty in 2009.

{¶7} The trial court held a hearing on Moore's motion. William Winegarner testified on Moore's behalf. Winegarner testified that he knew both Moore and the victim, Navario Banks. According to Winegarner, he, Moore, and Alvin Howell were leaving a nightclub on September 13, 2008, as Banks was walking up. Winegarner said that Moore had received a telephone call earlier that day in which he learned that his sister Starr Hemingway and her boyfriend, Banks, had "got into it." According to Winegarner, Moore did not know exactly what had happened, so when Moore saw Banks outside the bar, Moore had a "cool conversation" with him, told Banks that he was going to talk to his sister later, and then walked away with Winegarner.

{¶8} Banks walked away too, but according to Winegarner, Howell followed Banks, began arguing with him, and then punched him. Winegarner admitted on

cross-examination that both he and Moore saw Howell punch Banks. He further admitted that he knew that Moore had pleaded guilty to robbing Banks and had gone to prison as a result of his plea. Finally, Winegarner, who sometimes goes by the name "Ray," identified state's exhibit No. 1 as the state's witness list filed in the case, and admitted that his name was listed as "Ray Weingartner" on the list. He further identified state's exhibit No. 2 as the defense witness list filed by Moore's counsel, and admitted that his name was also on that list.

{¶9} Alvin Howell also testified for Moore. Howell said that Banks was Starr's ex-boyfriend. He stated that he and Moore were together on September 13, 2008, when he received a telephone call from Starr, who told him about the incident with Banks, that Banks had stolen her cell phone, and that she was in jail as a result of the incident. Howell told Moore about his conversation with Starr.

{¶10} Howell testified that he, Winegarner, and Moore went to a bar later that evening. Howell said that as he was outside smoking, he saw Moore and Banks outside talking. According to Howell, Moore had a "calm conversation" with Banks about the incident with Starr. Howell said he then walked over to the men and asked Banks where Starr's cell phone was. Banks pointed at his car. Howell said that as he and Banks walked toward Banks's car, they began fighting.

{¶11} Howell denied robbing Banks, however, and insisted that Starr's written statement, which Moore's attorney filed with the court prior to the hearing, was not truthful. In that statement, Starr stated that Howell told her that he and Moore had

walked up to Banks at the bar and asked him where Starr's things were and why he attacked her. Howell told Starr that he walked with Banks to Banks's car, began fighting with him, hit Banks in the head and knocked him out, and then stole $2,200 and an iPod from him.

{¶12} On cross-examination, Howell testified that he told Moore's attorney what had happened, and that Moore knew that Howell had punched Banks that night. Howell also admitted that his version of the events of September 13, 2008, contained in his affidavit and filed by defense counsel in September 2015 prior to the hearing was not new information, and that he (Howell) knew about the events reported in the affidavit immediately after the incident happened on September 13, 2008.

{¶13} Moore also testified at the hearing. He said that in 2009, he was charged in two criminal cases: one involving Banks and the other involving carrying a weapon while under disability. According to Moore, he planned on going to trial on the robbery case because he had not robbed Banks, but he eventually pleaded guilty in that case, as well as the other case, because he was promised a one-year concurrent sentence if he pleaded guilty to both cases. Moore testified that the robbery case made him a career offender in federal court for sentencing purposes.

{¶14} On cross-examination, the state reviewed Moore's criminal history, which included 25 convictions as an adult and 23 arrests. Moore confirmed that the information about his criminal history was accurate, stating, "No, I won't object to it. If that's on my PSI, I did it."

**{¶15}** The prosecutor then showed Moore state's exhibit No. 3, the sentencing transcript from this case, which reflects that the prosecutor told the court prior to sentencing that, "[o]ther than what has been stated on the record, no threats or promises were made to induce this plea; however, the state of Ohio has made it clear to defense counsel that the state will be asking for a term of incarceration of more than the minimum." Moore said he did not remember the prosecutor's statement, and insisted that he pleaded guilty in this case only because he was promised a one-year concurrent sentence.

**{¶16}** Moore agreed on cross-examintion that he knew before going to the bar on September 13, 2008, that Banks had "put his hands" on his sister Starr. He testified that he saw Banks outside the bar and asked him what happened. Moore said that Howell came over, and when Banks told Howell that he would give Starr's phone back, Banks and Howell began walking to Banks's car. Moore said he saw Banks and Howell start fighting, and saw Howell hit Banks, who fell to the ground. Moore said he then left to go to another bar. Moore testified that he told his lawyer what had happened that evening and gave his attorney both Howell and Winegarner's names as witnesses.

**{¶17}** The state then called Teresa Riley, who was the assistant county prosecutor on this case until shortly before the plea hearing. Riley identified state's exhibit No.1 as the state's witness list that she prepared; she noted that the list included both Winegarner and Starr's names. She also identified state's exhibit No. 2 as the defendant's witness

list prepared by Moore's counsel and filed on September 3, 2009. Riley noted that the defense witness list included both Howell and Winegarner's names.

{¶18} Riley testified that after Moore's counsel advised her that Howell would be one of the defense witnesses, she went to speak with Howell but he refused to speak with her. She testified further that she remembered Banks very well, and that he was terrified of Moore and in fear for his life if he testified in the case. Riley testified that Banks reported to her that he had gotten into an altercation with Starr, during which he took her cell phone, and Starr was arrested because she shot a gun during the fight. Banks reported to Riley that he ran into Moore and "Maceo's boys" at the night club later that evening. Banks said that Moore asked him to step outside with him, and when he did, Moore opened his shirt, showed him his gun, and told him, "If you touch my sister again, I'll kill you." Moore then asked Banks where Starr's cell phone was, and Banks told him it was in his car. Riley testified that Banks told her that as he and Moore walked to his car, Moore knocked him unconscious. Banks told Riley that when he woke up, his keys and approximately $2,300 were missing from his pockets. Riley identified state's exhibit No. 5 as Banks's written statement. Riley was adamant that until she was taken off the case shortly before Moore pleaded guilty, there was never an agreed one-year sentence as part of the plea agreement.

{¶19} The trial court subsequently denied Moore's motion to withdraw his plea. This appeal followed.

## II. Analysis

**{¶20}** Under Crim.R. 32.1,

> A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.

**{¶21}** Accordingly, a defendant who moves to withdraw a guilty plea after sentencing has the burden of demonstrating manifest injustice. *State v. Owens*, 8th Dist. Cuyahoga No. 94152, 2010-Ohio-3881, ¶ 9. "Manifest injustice" has been defined as "a clear or openly unjust act." *State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208, 699 N.E.2d 83 (1998). The manifest injustice standard permits a defendant to withdraw his guilty plea only in extraordinary cases. *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977).

**{¶22}** We review a trial court's denial of a postsentence motion to withdraw a guilty plea for an abuse of discretion. *Owens* at ¶ 10. A trial court abuses its discretion when it renders a decision that is unreasonable, arbitrary, or unconscionable. *Cullen v. State Farm Mut. Auto. Ins. Co.*, 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.2d 614, ¶ 19.

**{¶23}** In his motion and at the hearing, Moore argued that he should be allowed to withdraw his plea to correct a manifest injustice because he is actually innocent of the charges to which he pleaded guilty, and that he pleaded guilty in this case only because he was promised a one-year sentence concurrent with the sentence in CR-09-521907 in exchange for his plea. The evidence adduced at the hearing, however, does not

demonstrate either that Moore was actually innocent of the charges to which he pleaded guilty, or that he was ever promised a one-year sentence in exchange for his guilty plea.

{¶24} In fact, the evidence at the hearing directly refuted Moore's claim that he was promised a one-year sentence in exchange for his plea. Moore produced nothing other than his self-serving statement that he was promised a one-year sentence. But Riley testified that there was never any promise of a one-year sentence in exchange for Moore's plea. And the transcript of the plea hearing directly refutes Moore's claim that he was promised a one-year sentence. The transcript reflects that the prosecutor informed the court that no promises were made to induce the plea and, further, that the state would be seeking more than the minimum one-year sentence at sentencing. The transcript further reflects that when the judge asked Moore if any promises had been made to induce his plea, Moore said "No." Furthermore, our review of the transcript indicates that there was no discussion whatsoever at the plea hearing by the court or counsel of a one-year sentence; instead, the court told Moore that the maximum sentence he could receive in this case was five years on each count, for a total of ten years. Moore told the court that he understood the possible maximum sentence if he pleaded guilty. Contrary to Moore's argument, the evidence demonstrated that he was not promised a one-year sentence in exchange for his plea.

{¶25} Nor did the evidence presented by Moore at the hearing support Moore's claim of innocence. Moore asserted that he had only recently learned that Howell had knocked Banks unconscious and robbed him, as testified to at the hearing by Howell and

Winegarner. But Moore conceded on cross-examination that none of what Howell and Winegarner testified to was new information. Indeed, when asked by the prosecutor, "so, everything that you're telling us today and that Mr. Winegarner's telling us and Mr. Howell is telling us, you knew this? You knew what had happened at the bar?" — Moore admitted that none of it was new information because he had "seen it" and "watched it." Moore further admitted that he gave his lawyer both Howell and Winegarner's names as witnesses.

{¶26} Moreover, Riley's testimony established that Banks was terrified of Moore and in fear for his life as a result of the robbery. Riley testified that Banks told her that Moore and "Maceo's boys" were at the bar that night, and that Moore, joined by two other males, showed him a gun and threatened him, and then knocked him unconscious as they were walking toward his car to retrieve Starr's cell phone. Riley identified state's exhibit No. 5 as Banks's statement to the police. In his statement, Banks reported that he got into a physical altercation with Moore's sister Starr on September 13, 2008, and that later that evening, Moore showed him a gun, threatened him, knocked him unconscious, and robbed him of $2,500[1] and an iPod while he was at a bar.

{¶27} This is not an extraordinary case that demonstrates a manifest injustice. To the contrary, the evidence presented at the hearing overwhelmingly supports the trial

[1]Although Banks's statement said that Moore stole $2,500 from him, Howell said the amount was $2,200, and Riley testified that Banks told her Moore stole approximately $2,300 from him. The varying amounts are not relevant to our analysis.

court's decision to deny Moore's motion. It is readily apparent that Moore's motion to withdraw his guilty plea, filed some five years after the plea was entered and only after the federal court denied Moore's motion to withdraw his guilty plea and sentenced him to a lengthy sentence, was nothing more than a ploy to reduce his sentence in federal court.

**{¶28}** In *State v. Cottrell*, 8th Dist. Cuyahoga No. 95053, 2010-Ohio-5254, the defendant sought to withdraw his guilty plea entered some ten years earlier, arguing that his underlying conviction would have severe consequences in his pending federal case. The trial court denied the defendant's motion to withdraw his plea. This court affirmed on appeal, stating, "we fail to see how the collateral consequences of [the defendant's] plea to a subsequent federal case, arising directly out of his further criminal activity, constitutes a manifest injustice in this case." *Id*. at ¶ 17.

**{¶29}** That is exactly the situation here. Moore's subsequent criminal activity, resulting in a lengthy federal sentence, does not create a manifest injustice in this case. Because Moore failed to demonstrate that he was innocent, or that he had been promised a one-year sentence in exchange for his plea, such that his guilty plea resulted in a manifest injustice, the trial court did not abuse its discretion in denying Moore's motion to withdraw his plea. The assignment of error is overruled, and the trial court's judgment is affirmed.

**{¶30}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, PRESIDING JUDGE

TIM McCORMACK, J., and
ANITA LASTER MAYS, J., CONCUR