[Cite as *Gordon v. Erie Islands Resort & Marina*, 2014-Ohio-4970.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

Carl R. Gordon, et al.                     Court of Appeals No. OT-13-040

    Appellees                         Trial Court No. 10-CV-271H

v.

Erie Islands Resort & Marina, et al.       **DECISION AND JUDGMENT**

    Appellants                        Decided: November 7, 2014

* * * * *

D. Jeffery Rengel and Thomas R. Lucas, for appellees.

John A. Coppeler and Bryan M. Ridder, for appellants.

* * * * *

**JENSEN, J.**

{¶ 1} Defendants-appellants, Erie Islands Resort & Marina, Erie Islands Resort &
Marina, Inc., and Erie Islands Holding Company (collectively "appellants"), appeal the
November 21, 2013 judgment of the Ottawa County Court of Common Pleas granting the
motion of plaintiffs-appellees, Carl and Gerri Gordon ("appellees"), for class

certification.[1]  For the reasons that follow, we reverse the decision of the trial court and remand for further proceedings.

## I.  Background

{¶ 2} Erie Islands Resort & Marina is a collection of cottages, campground sites, recreational facilities, and a marina located in Port Clinton, Ohio.  On August 25, 1989, appellees purchased an undivided 1/15,000 fee simple ownership interest as tenants-in-common for $10,200.  They made a cash payment of $1,020 and financed the remaining $9,180 with appellants over 120 months at a rate of 15 percent interest per annum. Appellees executed a promissory note and purchase money mortgage in favor of Erie Islands Resort & Marina.

{¶ 3} Appellees' ownership classification, designated as "A-1 Harbor Admiral," entitled them to use the marina and "to reserve and occupy a Campsite or a Cottage on a first-come, first-served, space available basis, and to use the recreational and common facilities within 'Erie Island Resort & Marina,'" for up to 14 consecutive days, with additional days allowed after a seven-day waiting period, in accordance with and subject to appellants' rules and regulations and the provisions of its declaration.  Appellees were

---

[1] Katherine Walderzak, the plaintiff in *Walderzak v. Erie Islands Resort & Marina*, Ottawa C.P. No. 11-CV-606H, moved on December 10, 2012, to consolidate her case with the present action, but it appears that the trial court consolidated the matters for purposes of a hearing on class certification only, and never ruled on the motion to consolidate.  We, therefore, address this appeal only as it concerns Carl and Gerri Gordon and the order granting their motion for class certification.

2.

obligated to pay an annual maintenance fee of $192, in addition to use fees for accommodations.

{¶ 4} According to its literature, the recreational amenities offered by appellants were intended to include a nine-hole professional golf course, tennis courts, a golf pro shop, an outdoor swimming pool for the R.V. villages, two tot lot/playgrounds, R.V. storage, a 300-boat slip marina, year-round boat storage, utilities and hookups at boat docks, fuel pumps, a boat rental fleet, a recreation center featuring an indoor/outdoor heated swimming pool, racquetball courts, a health club with sauna, a jacuzzi, locker rooms, a universal weight room, a snack bar and eating area, an adult lounge area, a teen lounge and meeting room, as well as a shopping complex consisting of a restaurant and lounge, retail shops, and a camping and boating supply store. Some of these amenities currently exist, and some do not.

{¶ 5} On September 27, 1992, appellees upgraded to a "Priority Gold Membership" for $2,495. They entered into an "Installment Sales Agreement and Disclosure Statement," a "Priority Gold Membership and Special Stipulations Addendum," and a "Resale Agreement." Under these agreements, appellees' maintenance fee was "frozen" at $210; appellees were entitled to overnight accommodations for up to 21 consecutive nights at a time, subject to specified use charges and other restrictions; and they were approved to participate in appellants' resale program, under which appellants established a number of procedures and preconditions as to the price, the creditworthiness of the prospective buyer, and other conditions of sale.

3.

**{¶ 6}** On February 18, 1994, appellees entered into a "Priority Gold Modification Agreement," and "Priority Gold Option Agreement Exhibit A," and at that time paid an additional $495 to appellants. As part of that agreement, they could quitclaim all of their previously-purchased rights, titles, and interests to appellants while maintaining membership rights in "Coast to Coast" and/or RPI, "subject to their rules and regulations," and were granted 14 days of usage at appellants' resort per year, with reservations allowable up to 45 days in advance. The agreement gave appellants a 20-year option to purchase appellees' interest at 85 percent of appellees' purchase price of $12,695.

**{¶ 7}** On March 22, 2003, appellees again upgraded their agreement with appellants by entering into a "Platinum Club Membership Agreement #4139" at an "A-1 Admiral Membership" level. They paid an additional $4,000 to appellants. Under this agreement, maintenance fees and special assessments were waived permanently. Appellees' benefits remained substantially the same, but some priority reservations and usage discounts were added. Appellants imposed a number of transfer limitations.

**{¶ 8}** Appellants' rules and regulations are set forth in the resort's declaration, which is filed with the county recorder's office. The declaration permits appellants to modify the rules and regulations unilaterally and it provides that the declaration, too, can be modified either by a vote of two-thirds of the members or unilaterally by appellants, unless three-fourths of the membership votes to repeal any such amendment. Appellants

4.

first filed declarations in 1988. They have since amended the declarations approximately six times between 1988 and 2011.

{¶ 9} On April 9, 2010, appellees filed a 19-count complaint alleging various claims of fraud, breach of contract, breach of fiduciary duty, and violations of the Ohio Consumer Sales Practices ("CSPA") and the Ohio Retail Installment Sales Acts ("RISA"). To briefly summarize, appellees' complaint alleged that appellants failed to provide all of the amenities that it represented would be available; sold more memberships than the resort could reasonably accommodate; charged various assessments and maintenance fees despite those fees having been "frozen" or waived; disguised fees and assessments to circumvent agreements providing for "frozen" or waived maintenance fees and assessments; charged fees that had no relationship to the true operational expenses of the resort; unreasonably amended the rules governing use of the resort facilities; imposed unfair procedures and preconditions upon the members' ability to transfer their membership in the resort; misrepresented the status of the resale market; sold "upgrades" that did not offer any additional appreciable rights; breached their duties and implied warranties of good faith and fair dealing and other fiduciary duties; engaged in a systematic, predatory scheme of selling illegal timeshares and memberships; and violated a number of specific statutes and regulations in their method of selling and financing interests in the resort.

{¶ 10} Since its formation, appellants have sold approximately 10,000 interests and 5,000 upgrades. In their complaint, appellees sought class certification under Civ.R.

5.

23 and sought to serve as class representatives. They ultimately argued that six classes should be certified:

Class 1. All Purchasers of the Undivided Ownership Interests from Defendant Erie Islands Resort and Marina, an Ohio general partnership, ("Erie Islands").

Class 2. Purchasers of Undivided Ownership Interests from Defendant Erie Islands Resort and Marina, an Ohio general partnership, ("Erie Islands") who were charged or paid an expense reimbursement fee or assessment by Erie Islands after purchase where the expense reimbursement fee or assessment was collectively in excess of true operational expenses of the Resort.

Class 3. "Platinum Club" Purchasers of Undivided Ownership Interests from Defendant Erie Islands Resort and Marina, an Ohio general partnership, ("Erie Islands") who were charged or paid an expense reimbursement fee or assessment by Erie Islands after purchase.

Class 4. "Gold Club" Purchasers of Undivided Ownership Interests from Defendant Erie Islands Resort and Marina, an Ohio general partnership, ("Erie Islands") who were charged or paid an expense reimbursement fee or assessment by Erie Islands after purchase in excess of their agreed set or frozen annual expense reimbursement fee or assessment.

6.

Class 5. Purchasers of Undivided Ownership Interests from Defendant Erie Islands Resort and Marina, an Ohio general partnership, ("Erie Islands") who made payments to Erie Islands for an "Ad Valorem Tax" or "VAT" tax.

Class 6. Purchasers of Priority Gold Modification Agreements, with or without purchase of the related Option Agreement.

{¶ 11} Appellants opposed class certification. They contended that each of the potential 10,000 class members would need to be examined to resolve the various fraud claims to determine what was represented to each of them, whether they relied on those representations, and whether they suffered damages. As to damages, appellants argued that any alleged damages claims would be individualized and, in essence, mini-trials would have to be conducted for each class member. Appellants also contended that because appellees' interests were purchased in 1989, 1992, 1994, and 2003, and because the CSPA and RISA have two-year statutes of limitations, fraud and breach of fiduciary duty have four-year statutes, and breach of written contract has a 15-year statute, virtually all of appellees' claims are time-barred. They claimed that this defense created a conflict between appellees and potential class members and rendered appellees unable to represent the class. Finally, appellants argued that this court has determined that the CSPA is inapplicable to appellees' claims because they concern the purchase of an undivided interest in real property. They insisted that these defenses made it impossible for appellees to satisfy Civ.R. 23(A)(1), (4), and (5).

7.

{¶ 12} The trial court conducted a hearing on appellees' request for class certification on January 4, 2013. Thereafter, the parties submitted proposed findings of fact and conclusions of law. The court issued its decision on November 21, 2013. In a two-paragraph decision, it granted appellees' motion and certified the classes identified by appellees.

{¶ 13} Without elaborating as to the facts supporting each factor, the trial court found that the classes are so numerous that joinder of all members is impracticable; there are questions of law or fact common to the classes; the claims or defenses of the representative parties are typical of the claims or defenses of the classes; the representative parties will fairly and adequately protect the interests of the classes; the classes are identifiable; and the class definitions are unambiguous. The court found the provisions of Civ. R. 23(B)(1)(a) and (b) applicable, and it found that questions of law or fact common to the members of the classes predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

{¶ 14} It is from that decision that appellants filed this appeal. In its single assignment of error, appellants contend that "[t]he trial court erred in certifying this matter as a class action." They identify the following issues for our review:

1. The trial court erred and abused its discretion in finding that an identifiable class does exist and that the proposed class definition is unambiguous.

8.

2. The trial court erred and abused its discretion in finding that there are sufficient questions of law or fact common to the class and that there is commonality between Appellees and the Class.

3. The trial court erred and abused its discretion in finding that the claims of Appellees are typical of the claims of the class.

4. The trial court erred and abused its discretion in finding that the Appellees fairly and adequately protect the interest of the proposed class.

5. The trial court erred and abused its discretion in finding that Appellees met the requirements of Civ.R. 23(B).

## II. Standard of Review

{¶ 15} A trial court has broad discretion in determining whether a class action may be maintained and we will not disturb its determination absent an abuse of discretion. *Cullen v. State Farm Mut. Auto. Ins. Co.,* 137 Ohio St. 3d 373, 2013-Ohio-4733, 999 N.E.2d 614, ¶ 19. A trial court abuses its discretion when its decision is "unreasonable, arbitrary, or unconscionable." *Id.,* quoting *Wilson v. Brush Wellman, Inc.,* 103 Ohio St.3d 538, 2004-Ohio-5847, 817 N.E.2d 59, ¶ 30. This standard applies to both the trial court's ultimate decision and as to its determination regarding each requirement of the rule. *Id.*

### III. Analysis

{¶ 16} As the Ohio Supreme Court recently discussed in *Cullen v. State Farm Mut. Auto. Ins. Co.,* 137 Ohio St. 3d 373, 2013-Ohio-4733, 999 N.E.2d 614, ¶ 12, Civ.R. 23 sets forth seven requirements for maintaining a class action:

(1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the class must be so numerous that joinder of all members is impracticable; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three Civ.R. 23(B) requirements must be met.

{¶ 17} A party seeking class certification bears the burden of demonstrating each of these requirements by a preponderance of the evidence. *Id.* at ¶ 15. In considering whether to certify a class, a trial court must conduct a rigorous analysis to determine that each requirement is satisfied. *Id.* at ¶ 16. In performing this analysis, the court must resolve factual disputes relative to each requirement and find, "based upon those determinations, other relevant facts, and the applicable legal standard, that the requirement is met." *Id.* Should a factual dispute concerning a Civ.R. 23 requirement overlap with a merit issue, the trial court may examine the underlying merits of the claim

10.

to the extent necessary to determine whether the requirement of the rule is satisfied. *Id.* at ¶ 17.

{¶ 18} In its appeal, appellants claim that the trial court erred in granting appellees' motion for class certification because there exists no identifiable class, the proposed class definition is ambiguous, there are not sufficient questions of law or fact common to the class, there is no commonality between appellees and the class, typicality is lacking, appellees do not fairly and adequately protect the interests of the proposed class, and the Civ.R. 23(B) requirements have not been established. The trial court's judgment does not analyze these requirements—it merely states that each requirement was met.

{¶ 19} In *Hamilton v. Ohio Sav. Bank,* 82 Ohio St.3d 67, 71, 694 N.E.2d 442 (1998), the Supreme Court of Ohio discussed the importance of the trial court explaining its reasons for finding that each Civ.R. 23 prerequisite was either satisfied or not satisfied. It discussed the difficulty in applying the abuse-of-discretion standard to Civ. R. 23 determinations where the trial court has failed to articulate the rationale for its decision. It explained:

> While there is no explicit requirement in Civ.R. 23 that the trial
> court make formal findings to support its decision on a motion for class
> certification, there are compelling policy reasons for doing so. Aside from
> the obvious practical importance, articulation of the reasons for the decision
> tends to provide a firm basis upon which an appellate court can determine

11.

that the trial court exercised its discretion within the framework of Civ.R. 23, and discourages reversal on the ground that the appellate judges might have decided differently had they been the original decisionmakers. On the other hand, the failure to provide an articulated rationale greatly hampers an appellate inquiry into whether the relevant Civ.R. 23 factors were properly applied by the trial court and given appropriate weight, and such an unarticulated decision is less likely to convince the reviewing court that the ruling was consistent with the sound exercise of discretion. (Citations omitted.) *Id.* at 70-71.

The court, therefore, suggested that "in determining the propriety of class certification under Civ.R 23, trial courts make separate written findings as to each of the seven class action requirements, and specify their reasoning as to each finding."

**{¶ 20}** We encountered this issue in reviewing an order granting class certification in *Miller v. Volkswagen of Am., Inc.,* 6th Dist. Erie No. E-05-005, 2006 WL 4017949 (Apr. 7, 2006). There the trial court issued a seven-word judgment entry stating only that "Plaintiff's motion for class certification is granted." *Id.* at ¶ 7. We recognized that the trial court is required to conduct a rigorous analysis into whether the Civ.R. 23 prerequisites have been satisfied. *Id.* at ¶ 13. We also emphasized that under this standard, "a trial court is required to address any argument raised in opposition to class certification; a decision that ignores such an argument is properly reversed." *Id.* With those principles in mind, we reversed the trial court's judgment and remanded the matter

to the trial court so that it could articulate its reasons for finding that each of the seven

class certification requirements had been satisfied.[2]

{¶ 21} Other Ohio courts have held similarly. For instance, in *Maas v. Penn*

*Central Corp.,* 11th Dist. Trumbull No. 2003-T-0123, 2004-Ohio-7233, after discovery, a

hearing, and submission of proposed findings of fact and conclusions of law filed by the

parties, the trial court granted plaintiffs' motion for class certification. *Id.* at ¶ 10, 12-14.

Without providing its rationale, the court found that the matter should proceed as a class

action under Civ.R. 23(B)(2) as to some claims, and Civ.R. 23(B)(3) as to others. *Id.* at

¶ 14. It also defined the class. *Id.* at ¶ 15. The appellate court observed, however, that

the defendants had raised several issues concerning class certification that were worthy of

consideration that had not been addressed. It explained:

> [W]e are unable to conclude, from either the record or the appealed
>
> judgment entry, whether the trial court carefully applied the class action
>
> requirements and conducted a rigorous analysis into whether they were
>
> satisfied. The minimal language of the judgment entry before us precludes
>
> us from determining if the ruling was consistent with the sound exercise of

---

[2] *But see Stammco, LLC v. United Tel. Co. of Ohio,* 6th Dist. Fulton No. F-07-024, 2008-Ohio-3845, *rev'd on other grounds, Stammco, LLC v. United Tel. Co. of Ohio,* 25 Ohio St.3d 91, 2010-Ohio-1042, 926 N.E.2d 292. In *Stammco,* we elected to review the merits of the appeal despite the trial court's failure to provide separate findings of fact as to each Civ.R. 23 prerequisite. There, however, the trial court issued a "lengthy and detailed opinion reviewing relevant facts" and other information pertinent to its decision. *Id.* at ¶ 27.

13.

discretion. This case presents complicated issues that require a more detailed analysis that includes the reasons supporting certification.

(Internal citations and quotations omitted.) *Id.* at ¶ 32.

The court determined that the judgment should be reversed and remanded. *See also Martin v. Grange Mut. Ins. Co.,* 11th Dist. Geauga Nos. 2002-G-2473, 2002-G-2479, 2003-Ohio-4869, ¶ 32 (reversing and remanding where trial court's order granting plaintiffs' motion to certify merely recited the Civ.R. 23 prerequisites without comment or explanation); *Dunkelman v. Cincinnati Bengals,* 170 Ohio App. 3d 224, 2006-Ohio-6825, 866 N.E.2d 576, ¶ 15 (1st Dist.) ("The trial court's entry certifying the class * * * is devoid of any rationale, yet [sic] alone any rigorous analysis, relating to any of the prerequisites for class certification. Given the inadequacy of the record before us, we cannot properly review the trial court's entry granting class certification * * * under an abuse-of-discretion standard.").

{¶ 22} Consistent with the Supreme Court's recommendations in *Hamilton,* and the other decisions applying *Hamilton,* we reverse the trial court's judgment and remand the matter so that the trial court can elaborate as to its rationale for reaching its decision, addressing each Civ.R. 23 prerequisite and addressing appellants' objections.

{¶ 23} We find appellants' sole assignment of error well-taken.

14.

## IV. Conclusion

**{¶ 24}** Because we determine that the November 21, 2013 judgment of the Ottawa County Court of Common Pleas does not provide sufficient detail for us to make an abuse-of-discretion determination, we reverse and remand for proceedings consistent with this decision. Pursuant to App.R. 24, the costs of this appeal are assessed to appellees.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                                        _____
JUDGE

Thomas J. Osowik, J.

_____

James D. Jensen, J.                                           JUDGE
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.