[Cite as *Gordon v. Erie Islands Resort & Marina*, 2016-Ohio-7107.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY


Carl R. Gordon, et al.                        Court of Appeals No. OT-15-035

        Appellees                             Trial Court Nos. 2010-CV-271H
                                                               2011-CV-606H
v.

Erie Islands Resort & Marina, et al.

        Appellants


Karen Walderzak

        Appellee

v.

Erie Islands Resort & Marina, et al.          **DECISION AND JUDGMENT**

        Appellants                            Decided: September 30, 2016

* * * * *

D. Jeffery Rengel and Thomas R. Lucas, for appellees.

John A. Coppeler and Bryan M. Ridder, for appellants.

* * * * *

**JENSEN, P.J.**

## I. Introduction

{¶ 1} Following this court's order of remand, the Ottawa County Court of Common Pleas certified this case as a class action.

{¶ 2} Plaintiffs-appellees are Carl and Geri Gordon and Karen Walderzak. The Gordons and Ms. Walderzak, collectively referred to as "appellees," separately purchased ownership interests in a resort, known as Erie Islands Resort & Marina, located in Port Clinton, Ohio, in Ottawa County. Defendants-appellants are Erie Islands Resort & Marina, Erie Islands Resort & Marina, Inc., and Erie Islands Holding Company.

{¶ 3} In this case appellees allege, generally, that appellants breached the terms of the purchase agreements, committed fraud, violated their fiduciary duty to appellees and violated two consumer protection statutes. At issue in this appeal, however, is whether the case was properly certified as a class action under Civ.R. 23. Appellants dispute that the elements for class certification are met. They conclude that the trial court abused its discretion in certifying the case.

{¶ 4} For the reasons that follow, we affirm the decision to certify this case as a class action. Accordingly, we remand the matter for further proceedings consistent with this decision.

## II. Statement of Facts and Procedural History

{¶ 5} Erie Islands Resort & Marina was formed in 1987 when its parent company acquired 145 acres of undeveloped land along Lake Erie in Port Clinton, Ohio.

2.

{¶ 6} The development is a collection of cottages, campground sites, recreational facilities, and a marina. In August of 1989, appellees Carl and Geri Gordon purchased an undivided 1/15,000 fee simple ownership interest "as tenants-in common" for a purchase price of $10,200. The Gordons' undivided ownership interest is commonly referred to as a "UOI." The Gordons put 10 percent down and financed the remaining 90 percent with appellants over 120 months, at a rate of 15 percent interest per annum.

{¶ 7} Between 1989 and 2003, the Gordons' ownership interest and classification changed four times. We briefly summarize those classifications here. We note, however, that we described the various classifications and corresponding rights and obligations in greater detail in our previous decision. *Gordon v. Erie Islands Resort & Marina*, 6th Dist. Ottawa No. OT-13-040, 2014-Ohio-4970 ("*Gordon I*").

{¶ 8} To summarize, the Gordons purchased a UOI at the "A-1 Harbor Admiral" classification level in 1989, entitling them to use a campsite or cottage and the common facilities for up to 14 consecutive days. The Gordons were obligated to pay an annual maintenance fee of $192, in addition to use fees for accommodations.

{¶ 9} Appellee Karen Walderzak purchased the same ownership interest at the same classification level the previous year, in 1988.

{¶ 10} According to its literature, appellants offered a wide variety of recreational activities, both indoor and outdoor, on land and in the water. The record indicates that some of the amenities currently exist, and some do not.

3.

{¶ 11} In 1992, the Gordons upgraded to a "Priority Gold Membership" for $2,495, which entailed entering into three separate agreements with appellants. Under these agreements, the Gordons' maintenance fee was "frozen" at $210; they were entitled to overnight accommodations for up to 21 consecutive nights; and they were approved to participate in appellants' resale program. Under the program, appellants established a number of procedures and preconditions as to the price, the creditworthiness of the prospective buyer, and other conditions of sale.

{¶ 12} In 1994, the Gordons upgraded again by entering into to a "Priority Gold Modification Agreement," for which they paid an additional $495 to appellants. As part of that agreement, the Gordons could quitclaim all of their previously-purchased rights, titles, and interests to appellants while maintaining certain membership rights, "subject to their rules and regulations." The agreement gave appellants a 20-year option to purchase the Gordons' interest at 85 percent of the purchase price of $12,695.

{¶ 13} Finally, in 2003, the Gordons entered into a "Platinum Club Membership Agreement" whereby they paid an additional $4,000 to appellants. Under this agreement, maintenance fees and special assessments were waived permanently. The Gordons' benefits remained substantially the same, but some priority reservations and usage discounts were added. Appellants imposed a number of transfer limitations.

{¶ 14} Since its formation, appellants have sold approximately 10,000 UOI's in the resort and 5,000 upgrades. Appellants state in their brief, however, that "many of the approximate 10,000 sales transactions would have also included spouses."

4.

{¶ 15} Appellants' rules and regulations are set forth in the resort's declaration, which is filed with the county recorder's office. Appellants amended the declarations approximately six times between 1988 and 2011.

{¶ 16} On April 9, 2010, the Gordons filed a 19-count complaint. On November 21, 2011, Walderzak filed a nine-count complaint, alleging similar, but not identical, facts and legal theories against the same defendants. (Ottawa Co. C.P. case No. 2011-CV-606H).

{¶ 17} Gordons' Counts 1 through 9 and Walderzak's first claim allege that appellants violated the Ohio Consumer Sales Practices Act ("CSPA"), R.C. Chapter 1345. Gordons' Counts 10-15, and Walderzak's Counts 2-4 and 6-7, allege fraud and fraudulent misrepresentations by appellants. Gordons' Counts 16 and 17, and Walderzak's Counts 5 and 9, allege breach of contract. Gordons' Count 18 alleges violation of the Ohio Retail Installment Sales Act ("RISA"), R.C. Chapter 1317. Finally, Gordons' Count 19 alleges a claim for breach of appellants' fiduciary duty.

{¶ 18} In general, the complaints allege that appellants failed to provide all of the amenities that they represented would be available; sold more memberships than the resort could reasonably accommodate; charged various assessments and maintenance fees despite those fees having been "frozen" or waived; disguised fees and assessments to circumvent agreements providing for "frozen" or waived maintenance fees and assessments; charged fees that had no relationship to the true operational expenses of the resort; unreasonably amended the rules governing use of the resort facilities; imposed

5.

unfair procedures and preconditions upon the members' ability to transfer their membership in the resort; misrepresented the status of the resale market; sold "upgrades" that did not offer any additional appreciable rights; breached their duties and implied warranties of good faith and fair dealing and other fiduciary duties; engaged in a systematic, predatory scheme of selling illegal timeshares and memberships; and violated a number of specific statutes and regulations in their method of selling and financing interests in the resort. *Gordon I*, 6th Dist. Ottawa No. OT-13-040, 2014-Ohio-4970, at ¶ 9.

{¶ 19} In their complaint, the Gordons sought class certification under Civ.R. 23 and sought to serve as class representatives. They ultimately argued that six classes should be certified. Appellants opposed class certification.

{¶ 20} On January 4, 2013, the trial court conducted a hearing on the Gordons' request for class certification. On November 21, 2013, in a two-paragraph decision, the court certified the case.

{¶ 21} Appellants appealed. By decision dated November 7, 2014, we reversed the trial court and remanded the matter, relying on *Hamilton v. Ohio Sav. Bank*, 82 Ohio St.3d 67, 694 N.E.2d 442 (1998). Consistent with that case, we ordered the lower court to "elaborate as to its rationale for reaching its decision [to certify the case as a class action], addressing each Civ.R. 23 prerequisite and addressing appellants' objections." *Gordon I* at ¶ 22.

6.

**{¶ 22}** Following remand, the parties filed proposed findings of fact and conclusions of law. On August 4, 2015, the lower court modified its previous certification order but reached the same decision, that the elements of Civ.R. 23 were met and that the case ought to be certified. By separate order, it also consolidated Walderzak's case with the instant case.[1]

### III. The Trial Court's Decision and Description of the Class and Subclasses

**{¶ 23}** The lower court authored a 34-page opinion in which it certified the following class and five subclasses:

> Persons or entities, other than Defendants, <u>who owned an Unidentified Ownership Interest or Ownership Interest Modification</u> in Erie Islands Resort & Marina in Bay Township, Ottawa County, Ohio (further referenced and described at Vol. 332, Page 667 Ottawa County Records "Erie Islands Resort") <u>on or after April 9, 1995</u>.

> Sub-Class 1: Persons or Entities, other than Defendants, who owned an Undivided Ownership Interest in Erie Islands Resort and <u>who paid a reimbursement expense charge or assessment to Defendant(s) after on or after [sic] April 9, 1995</u> other than for the purchase of an Undivided Ownership Interest or Ownership Interest Modification in Erie Islands Resort.

---

[1] Appellants did not appeal the trial court's order of consolidation.

Sub-Class 2:  Persons or Entities, other than Defendants, who owned an Undivided Ownership Interest modification in Erie Islands Resorts where annual fees and expense reimbursements were set or "frozen" and who paid a reimbursement, charge or assessment to Defendant(s) in excess of the set, or "frozen", annual reimbursement expense, charge or assessment, on or after April 9, 1995.

Sub-Class 3:  Person or Entities, other than Defendants, who owned an Undivided Ownership Interest "Priority Gold" modification in Erie Islands Resorts.

Sub-Class 4:  Person or Entities, other than Defendants, who entered into a "Resale Agreement" with Defendant(s) on or after April 9, 1995.

Sub-Class 5:  Persons or Entities, other than Defendants, who owned an Undivided Ownership Interest modification ("Platinum Club") in Erie Islands Resorts and who paid a reimbursement expense, charge or assessment to Defendant(s) after on or after [sic] April 9, 1995 other than for purchase of an Undivided Ownership Interest or Ownership Interest Modification in Erie Islands Resort.  (Emphasis added.)

## IV.  Appellants' Assignment of Error

The trial court erred in certifying this matter as a class action.

## V.  Law and Analysis

### A.  Civ.R. 23 and the Standard of Review

{¶ 24} A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only * * * and [t]o come within the exception, a party seeking to maintain a class action must affirmatively demonstrate his compliance with Rule 23."  *Cullen v. State Farm Mut. Auto. Ins. Co.*, 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.2d 614 ¶ 11.

{¶ 25} The following seven requirements must be satisfied before an action may be maintained as a class action under Civ.R. 23:  (1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the class must be so numerous that joinder of all members is impracticable; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three Civ.R. 23(B) requirements must be met.  *Hamilto*n, 82 Ohio St.3d at 71, 694 N.E.2d 442; Civ.R. 23(A) and (B).

{¶ 26} A party seeking class certification bears the burden of demonstrating each of the requirements by a preponderance of the evidence.  *Cullen* at ¶ 15.  In considering whether to certify a class, a trial court must conduct a rigorous analysis to determine that each requirement is satisfied.  *Id*. at ¶ 16.  In performing this analysis, the court must resolve factual disputes relative to each requirement and find, "based upon those

9.

determinations, other relevant facts, and the applicable legal standard, that the requirement is met." *Id*. Should a factual dispute concerning a Civ.R. 23 requirement overlap with a merit issue, the trial court may examine the underlying merits of the claim to the extent necessary to determine whether the requirement of the rule is satisfied. *Id*. at ¶ 17.

{¶ 27} A trial court has broad discretion in determining whether a class action may be maintained, and we will not disturb its determination absent an abuse of discretion. *Id*. at ¶ 19. A trial court abuses its discretion when its decision is "unreasonable, arbitrary, or unconscionable." *Id*., quoting *Wilson v. Brush Wellman, Inc*., 103 Ohio St.3d 538, 2004-Ohio-5847, 817 N.E.2d 59, ¶ 30. This standard applies to both the trial court's ultimate decision and as to its determination regarding each requirement of the rule. *Id*.

{¶ 28} In support of their single assignment of error, appellants argue that the trial court abused its discretion in making the following six findings: (1) that an identifiable class exists and that the proposed class is unambiguous; (2) that appellees are members of that class; (3) that there are sufficient questions of law and fact that are common to the class and there is commonality between appellees and the class; (4) that appellees' claims are typical of the claims of the class; (5) that appellees fairly and adequately protect the interests of the proposed class; and (6) that appellees met the requirements of Civ.R. 23(B).

{¶ 29} We address each argument separately.

10.

**B. An Identifiable Class Exists and the Proposed Class is Unambiguous**

{¶ 30} The focus at this stage is on how the class is defined. The class must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Hamilton*, 82 Ohio St.3d at 71-72, 694 N.E.2d 442.

{¶ 31} Appellants argue that the proposed class description is indefinite because, in order to identify the class, the parties and the court would be required to "conduct an extensive examination of the merits and claims of each potential member." Appellants claim that "individualized inquiries" would have to be made of each of the potentially 10,000 class members to determine whether all of them have suffered harm to which common questions of law or fact apply.

{¶ 32} We disagree. To determine whether an individual is a member of the class, the focus is not upon the plaintiffs' claims but rather the actions and practices of the defendants. *Id*. Indeed, "[t]he question as to whether there are differing factual and legal issues 'does not enter into the analysis until the court begins to consider the Civ.R. 23(B)(3) requirement of predominance and superiority.'" *Hamilton* at 73, quoting *Marks v. C.P. Chem. Co., Inc.*, 31 Ohio St.3d 200, 202, 509 N.E.2d 1249 (1987).

{¶ 33} For example, in *Hamilton*, the proposed classes consisted of a group of borrowers whose mortgage interest was calculated a certain way by the bank. Finding that an identifiable class existed, the court said,

11.

[We] need only look to the actions or practices of [the bank] to determine whether an individual is a member of any of the respective subclasses. * * * In fact, in October 1985, [the bank] readily identified and notified [2,700] of its borrowers that their loans would not fully amortize within the intended term. It is difficult to accept that individual knowledge inquiries are required to determine class membership in this case, when [the bank] was able to ascertain, with a reasonable effort, two thousand seven hundred prospective class members without inquiring as to their knowledge or understanding of the terms of their agreements. *Id*. at 74

{¶ 34} The same is true in this case. The trial court can properly determine whether a person is a member of the class by reviewing the individual's deed to determine if he or she owned the UOI on or after April 9, 1995. Likewise, a review of appellants' computer records will show what type of agreement governed the parties' relationship (e.g. A-1 Admiral, Platinum, Gold, or Priority Gold) and the individual's payment history.

{¶ 35} We see no abuse of discretion by the trial court's conclusion that an identifiable class, with sub-classes, exists and that they are readily identifiable and unambiguous. We agree with the trial court that the evidence in this case, consisting of computer lists identifying all UIO holders, their payment history, and the types of charges assessed to them, is sufficient to define an unambiguous and identifiable class and subclasses.

12.

## C. Appellees are Members of the Class

{¶ 36} The class membership prerequisite requires only that the representative have proper standing. "In order to have standing to sue as a class representative, the plaintiff must possess the same interest and suffer the same injury shared by all members of the class that he or she seeks to represent." (Citations omitted.) *Id*. at 74.

{¶ 37} Appellants' primary argument is that virtually all of appellees' claims are barred by the statute of limitations and therefore they cannot be considered members of the proposed class. We discuss that argument under the predominance and superiority elements of Civ.R. 23(B)(3).

{¶ 38} The class consists of UIO holders since April 9, 1995. Appellees herein have been UOI holders since that time. Appellees claim that they were charged, and paid, certain improper expense reimbursements, charges and assessments in violation of their agreements with appellants. Since 1995, the Gordons have, at one time, held an ownership interest in all of the subclasses, and Walderzak has held a UOI at the admiral level. Thus, the Gordons and Walderzak have the same interest and same injury shared by members of the class and their respective subclasses that each seek to represent.

{¶ 39} We see no abuse of discretion by the trial court in its conclusion that appellees qualify as class members and may properly act as class representatives.

13.

**D. There are Sufficient Questions of Law and Fact That are Common to the Class and There is Commonality Between Appellees and the Class**

{¶ 40} Civ.R. 23(A)(2) requires the presence of questions of law or fact common to the class. "Courts generally give this requirement a permissive application. It is not necessary that all the questions of law or fact raised in the dispute be common to all the parties. If there is a common nucleus of operative facts, or a common liability issue, the rule is satisfied." *Hamilton*, 82 Ohio St.3d at 77, 694 N.E.2d 442.

{¶ 41} Here, the trial court cited the following as issues common to the class:

(1) Whether a given individual purchased a UOI from appellants during the class period;

(2) Whether each class member signed documents similar to those signed by appellees.

(3) Whether the declarations recorded by appellants were violative of Ohio law;

(4) Whether the class members paid various fees and assessments to appellants;

(5) Whether those fees and assessments were valid by contract or law;

(6) Whether the collection of expenses and assessments without any correlation to actual expenses were valid;

(7) Whether the collection of expenses and assessments in excess of the amount agreed to by class members was legal;

(8) Whether appellants engaged in fraud and/or breach of contract, as to sub-class 2, 3, and 5 by charging various monies in excess of actual expenses, when such items were supposed to have been frozen or eliminated;

(9) Whether appellants engaged in fraud by failing to provide documentation of the true operational expenses and in representing that the charges represented the true, actual expenses;

(10) Whether the appellants breached a fiduciary duty by charging excessive fees and by failing to provide an accurate accounting of those fees.

(11) Whether the appellants breached a contractual duty to provide all of the represented goods, services, and "amenities";

(12) Whether appellants had a right to change unilaterally their agreements with class members or to exercise a "veto power" over decisions of a majority of the UOI members;

(13) Whether appellants committed fraud and/or breach of contract by amending declarations without UOI members' majority approval;

(14) Whether appellants' actions violated the CSPA;

(15) Whether appellants engaged in unfair, deceptive and unconscionable acts;

(16) Whether a UOI constitutes an "unavailability of goods" under the CSPA;

(17) Whether the "discovery rule" applies to appellees' fraud and CSPA claims;

(18) Whether every class member suffered the same type of damage for payment of unauthorized assessments and fees.

{¶ 42} Finally, appellees' claims are premised upon representations set forth in appellants' standardized forms. These forms were used in the sale of the UOI's and modifications thereto. Because appellants used the same standardized forms as to all UOI holders within all of the various subclasses, the issue of appellants' liability is common to all members of the classes proposed by appellees. "Class action treatment is appropriate where the claims arise from standardized forms or routinized procedures, notwithstanding the need to prove reliance." *Hamilton* at 84.

{¶ 43} We see no unreasonable, arbitrary, or unconscionable conclusions by the trial court in finding that the commonality requirement was met here.

**E. The Claims of Appellees are Typical of the Claims of the Class**

{¶ 44} The requirement for typicality is met where there is no express conflict between the class representatives and the class. *Id.* at 77-78. The purpose of the

16.

typicality requirement of Civ.R. 23(A)(3) is to protect the interests of absent class members. *Id.*

{¶ 45} Moreover, typical does not mean "identical." *Planned Parenthood v. Project Jericho*, 52 Ohio St.3d 56, 556 N.E.2d 157 (1990). Here, the trial court found that the typicality requirement was met because the plaintiffs "allege they are the victims of the same common course of wrongful business practices and procedures that class members were subjected to, utilizing the same or similar form documents."

{¶ 46} Again, appellants assert a statute of limitations defense to the typicality element which we address in our discussion regarding Civ.R. 23(B)(3).

{¶ 47} We see no error in the trial court's finding that appellees' claims are typical of those in the class.

## F. Appellees Fairly and Adequately Protect the Interests of the Proposed Class

{¶ 48} Civ.R. 23(A)(4) consists of two distinct elements: that the class representatives fairly and adequately protect the class members' interests and that the counsel for the class is experienced in handling class action litigation. *Vinci v. American Can Co.*, 9 Ohio St.3d 98, 101, 459 N.E.2d 507 (1984).

{¶ 49} Here appellants challenge only the first prong. Appellants claim that, because all but one of the appellees' claims are time barred, appellees cannot protect the interests of the class. Appellants' statute of limitations defense is more properly related to the issue of predominance under Civ.R. 23(B)(3) and will be addressed below.

17.

**{¶ 50}** A representative is adequate so long as his or her interest is not antagonistic to that of other class members. *Hamilton*, 82 Ohio St.3d at 78, 694 N.E.2d 442. We see no abuse of discretion in the trial court's finding that there is no inherent conflict or antagonism between appellees' interests in pursuing the action and those of the class they seek to represent.

### G. Appellees Met the Requirements of Civ.R. 23(B)

**{¶ 51}** If a party satisfies all six elements under Civ.R. 23(A), the next requirement is to show that the action also falls within Civ.R. 23(B)(1), (2) or (3). In this case, the trial court found that certification was appropriate under Sections (B)(2) and (B)(3). The rule provides that a class action may be maintained if,

> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that <u>final injunctive relief</u> or corresponding declaratory relief is appropriate respecting the class as a whole; or

> (3) the court finds that the <u>questions of law or fact common to class members predominate over any questions affecting only individual members</u>, *and* that a <u>class action is superior to other available methods</u> for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

> (a) the class members' interests in individually controlling the prosecution or defense of separate actions;

(b) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(d) the likely difficulties in managing a class action. (Emphasis added.)

{¶ 52} Where class injunctive relief is sought, certification under Civ.R. 23(B)(2) may be appropriate. Here, appellees seek an order enjoining appellants from (1) collecting fees in contravention of their UOI's; (2) amending declarations without majority approval of the UOI holders; (3) denying use of the resort in contravention of the UOI's; and (4) limiting the transfer of UOI's.

{¶ 53} Appellants argue that Civ.R. 23(B)(2) is not applicable where "the primary relief requested is damages [and that] a simple request for injunctive relief is not enough to immunize a plaintiff's motion from scrutiny under Civ.R. 23(B)(3)." Appellants argue that because appellees are "primarily seeking monetary relief," Section (B)(2) is inapplicable.

{¶ 54} We disagree. A demand for monetary damages does not necessarily defeat certification under Civ.R. 23(B)(2). As explained by the Ohio Supreme Court,

Disputes over whether the action is primarily for injunctive or declaratory relief rather than a monetary award neither promote the disposition of the case on the merits nor represent a useful expenditure of

19.

energy. Therefore, they should be avoided. If the Rule 23(A) prerequisites have been met and injunctive or declaratory relief has been requested, the action usually should be allowed to proceed under subdivision (B)(2). Those aspects of the case not falling within Rule 23(B)(2) should be treated as incidental. Indeed, quite commonly they will fall within Rule 23(b)(1) or Rule 23(b)(3) and may be heard on a class basis under one of those subdivisions. Even when this is not the case, the action should not be dismissed. *Hamilton*, 82 Ohio St.3d at 87, 694 N.E.2d 442.

**{¶ 55}** More recently, the court distinguished *Hamilton* from the case before it, but emphasized that where "ongoing practice continues to injure all class members" certification under subdivision (B)(2) may be appropriate. *Cullen*, 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.2d 614, at ¶ 24 (Finding subdivision (B)(2) inapplicable). We see no error in the trial court's conclusion that the case is certifiable under Civ.R. 23(B)(2).

**{¶ 56}** Finally, with regard to Civ.R. 23(B)(3), there are two main elements to the rule. The first is that common questions of fact and law must predominate over individualized ones, and the second is that class certification is the superior method to fairly and efficiently adjudicate the matter. *Phillips v. Andy Buick, Inc.*, 11th Dist. No. 2004-L-093, 2006-Ohio-5832, ¶ 36.

**{¶ 57}** Here, we address appellants' statute of limitations argument. Appellants claim that the trial court abused its discretion in certifying this case because "virtually

20.

every claim raised by appellees in their complaint is time-barred." In support, appellants point to the Gordons' purchase of their UOI in 1989, and subsequent modifications thereto in 1992, 1994, and 2003, and to Walderzak's purchase in 1988. Appellants claim that, because the CSPA and RISA have two-year statutes of limitations, fraud and breach of fiduciary duty have four-year statutes, and breach of written contract has a 15-year statute, that most all of appellees' claims are time-barred. Appellants argue that, by operation of the statute of limitations to all but one of appellees' claims, there exists a conflict between appellees and potential class members. Because of the conflict, appellants conclude that (1) appellees are unable to represent the class because they are not members of the class; (2) appellees' claims are atypical and antagonistic to the class; and (3) appellees' individual issues (pertaining to the statute of limitations) predominate over issues common to the class.

{¶ 58} The trial court set a class period using the applicable 15-year statute of limitations for breach of contract in effect when the Gordons filed their complaint in 2010. The court concluded,

> Modification of the class identity to those persons who owned a UOI
> or modification within the fifteen (15) years prior to the filing of this
> lawsuit [i.e. April 9, 1995] places the putative class members and the
> named Plaintiffs in an identical situation vis-à-vis statute of limitations.
> The fifteen (15) year statute of limitations also applies to Plaintiffs' claims

for breach of fiduciary duty * * * and breach of the covenant of good faith in the contract between the parties. (Citations omitted). Decision at 30-31.

{¶ 59} "That a statute of limitations may bar the claims of some, but not all, class members does not compel a finding that individual issues predominate over common ones. * * * Rather, as long as there is a sufficient nucleus of common issues, differences in the application of a statute of limitations to individual class members will not preclude certification under Rule 23(b)(3)." *Hamilton*, 82 Ohio St.3d at 84, 694 N.E.2d 442, quoting 5 Moore's Federal Practice, 23-210 to 23-211, Section 23.46[3] (3 Ed.1997).

{¶ 60} Moreover, appellees argue that that the parties in this case have maintained an "ongoing contractual relationship." They claim that, because the agreements were still in effect, and still being exercised, the statute of limitations did not begin to run. We express no opinion as to appellees' argument. We agree with the trial court that appellants' statute of limitations defense is not currently ripe for adjudication inasmuch as it goes to the merits of the case and not as to whether it is certifiable under Civ.R. 23(B)(3). *Ojalvo v. Board of Trustees of Ohio State Univ.*, 12 Ohio St.3d 230, 233, 466 N.E.2d 875 (1984).

{¶ 61} The trial court found, and we agree, that a class action is superior to other available methods for fairly and efficiently adjudicating this controversy. We see no error in its conclusion that each subclass shares a common nucleus of operative facts and asserts the same theories of liability. The substantive elements of the class members' claims require the same proof for each class member, and the class is clearly bound

22.

together by a mutual interest in resolving common questions to a far greater extent than it may be divided by individual interests. Therefore, common questions represent a significant aspect of the case, and predominate over questions affecting only individual members of the class.

{¶ 62} We see no abuse of discretion by the trial court in finding that the case is certifiable under Civ.R. 23(B)(2) or 23(B)(3).

## VI.  Conclusion

{¶ 63} Consistent with the Supreme Court's recommendations in *Hamilton*, and the other decisions applying *Hamilton*, we find that the trial court elaborated sufficiently as to its rationale for reaching its decision, addressing each Civ.R. 23 prerequisite and addressing appellants' objections. We find appellants' sole assignment of error not well-taken.

{¶ 64} For the foregoing reasons, we affirm the judgment of the Ottawa County Court of Common Pleas to certify this case under Civ.R. 23 as a class action. This action is remanded for a trial on the merits. It is so ordered. Costs are assessed to appellants pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.            _____
                                                           JUDGE

Thomas J. Osowik, J.

                                           _____
James D. Jensen, P.J.                                           JUDGE
CONCUR.

                                           _____
                                                           JUDGE