[Cite as *Marck v. Partin*, 2024-Ohio-4829.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY

|  |  |  |
|---|---|---|
| TINA MARCK, et al., | : | CASE NO. CA2023-11-013 |
| Appellees, | : | |
| | : | O P I N I O N<br>10/7/2024 |
| - vs - | : | |
| | : | |
| THOMAS PARTIN, et al., | : | |
| Appellants. | : | |

CIVIL APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
Case No. 2020-0399

John Woliver; and O'Hara, Taylor, Sloan & Cassidy, and Michael J. O'Hara, for appellees.

Dinsmore & Shohl LLP, and Alan H. Abes; and Rose & Dobyns, and Richard L. Goettke, for appellants.

**M. POWELL, J.**

{¶ 1} Defendants-appellants, Thomas Partin and other related parties, appeal a decision of the Brown County Court of Common Pleas granting class certification to plaintiffs-appellees, Tina Marck, Nicholas and Diana Waldman, Cody Rutherford and Bethanie Rothwell, and Charles and Ticey Elliot.

{¶ 2} Appellants in this appeal are Thomas Partin, his wife Melissa Partin, Gary Rowland, DECA Management, Inc., Equity Trust Company Custodian FBO Thomas Partin IRA, Capital Investment Priorities, Brush Creek Motor Sports Complex LLC, Heritage Unlimited, LLC, Regal Partnership, and E.T.C. Custodian FBO Edmond Taylor IRA. Thomas Partin owns DECA, Capital Investment, Brush Creek, and Heritage. Equity Trust Company Custodian FBO Thomas Partin IRA is owned and managed by Thomas Partin as a retirement asset; E.T.C. Custodian FBO Edmond Taylor IRA is a retirement asset for Edmond Taylor, Thomas Partin's former brother-in-law. Thomas Partin is a 50 percent owner and the active partner in a residential real estate business with Gary Rowland.

{¶ 3} On August 11, 2020, appellees filed a complaint alleging that they and members of their class were "victimized by an unlawful residential property scheme devised and operated by Defendants." Specifically, the complaint alleged that appellees and members of their class entered into written agreements with various appellants to purchase homes and that the agreements "violate numerous federal and state laws designed to protect residential purchasers and tenants from predatory practices." For various reasons, appellees and members of their class are individuals who could not obtain conventional mortgage loan financing. The residential property agreements at issue were written by Thomas Partin and are either titled Lease with Option to Buy ("LWO") or Rent To Own ("RTO") (hereinafter, the various RTOs and LWOs will be referred to collectively as "the Contracts"). Heritage services all the Contracts. Steve Partin, the son of Thomas and Melissa Partin, is the office manager of Heritage and administers the operation.

{¶ 4} The complaint set forth causes of action for (1) violation of R.C. Chapter 5313, Ohio's Land Installment Contract law; (2) violation of R.C. Chapter 5321, Ohio's

Landlord-Tenant law; (3) violation of Ohio's Consumer Sales Practices Act under R.C. 1345.02 and 1345.03; (4) common law fraud; (5) violation of R.C. Chapter 1322, Ohio's Residential Mortgage Lending Act; (6) violation of Ohio's Consumer Sales Practices Act under R.C. 1345.031; (7) violation of the federal Truth in Lending Act ("TILA") and the federal Home Ownership Equity Protection Act ("HOEPA"); and (8) common law breach of contract. The complaint sought certification as a class action, declaratory and injunctive relief, and money damages.

{¶ 5} Betty Curless and her mother Bertha Popp were added as named plaintiffs in December 2020. On June 15, 2022, appellees filed a second amended complaint adding Tyrea Bragg as a named plaintiff and asserting an additional cause of action: violation of R.C. 1349.41, unfair and deceptive acts and practices by a nonbank mortgage lender.

{¶ 6} Contemporaneously with the filing of their second amended complaint, appellees moved for class certification pursuant to Civ.R. 23(B)(2) and (B)(3). The motion asserted that during his deposition, Steve Partin estimated that the number of Contracts exceeded 200. The motion sought class action certification for a class defined as

> All persons who entered into a "Rent-to-Own" or "Lease with Option to Buy" agreement with any Defendant to rent and/or purchase, of residential real property in Ohio, or entered into any other form of agreement in which any such class member is obligated to make periodic payments to any Defendant for the rent and/or purchase of residential real property in Ohio. These contracts are best described as seller financed residential mortgage agreements but the sellers retain the right of a residential landlord to evict for non-payment. The class is limited to those individuals described above who are or were making payments to any of the defendants at any time since August 11, 2016, to the present.
>
> Subclass A Definition: All individuals who fit the Class Definition and who continue to perform under such contract.
>
> Subclass B Definition: All individuals who fit the Class

- 3 -

Definition and who abandoned such contracts or otherwise terminated performance under such contracts.

{¶ 7}   A hearing on the motion for class certification was held before a magistrate on February 14-15, 2023.  At the outset of the hearing, the common law fraud and breach of contract claims were withdrawn by appellees as class claims.  Several appellees and Steve Partin testified at the hearing.  The depositions of appellees Bertha Bopp, Nicolas Waldman, and Charles and Ticey Elliot, the deposition of Thomas Partin, the deposition of Steve Partin, and several exhibits were admitted into evidence and reviewed by the magistrate in resolving the motion for class certification.

{¶ 8}   The evidence at the hearing revealed that appellants were in the business of self-financing home purchases by appellees and prospective class members.  This was accomplished pursuant to the Contracts.  The Contracts provided for the rent and/or purchase of residential real property.  Upon reviewing the Contracts' specific provisions and their servicing, the magistrate found that every Contract entered into by appellees and prospective class members contained the following 12 factual elements common to appellees and prospective class members:

1. **Down Payment Obligation** – The renter/purchaser is charged a down payment of 7 percent of the established purchase price at the outset; however, a renter/purchaser may choose to pay more to reduce the monthly payments.

2. **Payment Obligation of Plaintiffs** – The renter/purchaser is required to make monthly payments to appellants, which include the following three components: a monthly "mortgage" or "Rent To Own" payment; a property tax payment; and an insurance payment.  A monthly $5.00 water bill processing fee is also typically included in the Contracts.

3. **Obligation to Keep the Premises Fit and Habitable** – The obligation to keep the premises fit and habitable lies with appellees and prospective class members.

4. **Defendants' Right to Evict** – In the event a renter/purchaser is in arrears of rent or any payment obligation for more than ten days, appellants may evict the renter/purchaser as if appellants are residential landlords.  The evidence showed that appellants have issued three-day notices to vacate to appellees when a water bill was not timely paid.

5. **Recording of Documents** – Appellants never record the Contracts with the county recorder.

6. **The Finance Terms** – After the initial payment, the balance of the purchase price is financed by appellants over 30 years at a 12 percent interest rate.  Appellants have developed an amortization schedule setting forth the calculation of the payments over the life of the Contracts.

7. **Seller Financed Agreements** – Appellants function as a nonbank financer of the Contracts.

8. **Escrow Accounts** – Although appellants handle all the property tax payments and insurance payments for the renter/purchaser, they do not maintain separate escrow accounts for these payments.

9. **Finance Disclosures** – Other than advising the renter/purchaser that the payment obligation is financed at 12 percent, no other finance information or other disclosures which might be required under both federal and state law are provided.

10. **Insurance Information** – the renter/purchaser is charged a monthly

amount for "insurance," yet no policy is ever issued in the name of the renter/purchaser. Additionally, the amount of coverage is limited to appellants' interest in the property and may not cover the purchaser's entire interest. Unless specifically requested, appellants never provide the information to the renter/purchaser of the amount of insurance coverage being purchased, the terms of coverage including the losses which would be insured; the process by which a claim may be made; and the identity of the insurer.

11. **Late Payment Penalty** – If the renter/purchase is not current in any financial obligation by the seventh day of the due date, a $50.00 late fee penalty is assessed.

12. **No Determination of Ability to Make Scheduled Payments** – Steve Partin confirmed appellees' testimony that appellants never inquired of any of the appellees or class members as to whether they had any financial ability to make the scheduled payments pursuant to the terms of the Contracts.

{¶ 9} On July 25, 2023, the magistrate granted appellees' motion for class certification for the class and two subclasses as defined and requested by appellees. The magistrate found that appellees had satisfied Civ.R. 23(A), (B)(2), and (B)(3). Appellants filed objections to the magistrate's decision. On October 13, 2023, the trial court overruled appellants' objections and adopted the magistrate's decision.

{¶ 10} Appellants now appeal the class certification, raising four assignments of error. Appellants do not contest the trial court's findings regarding numerosity or adequacy of representation by class counsel. Rather, they challenge the trial court's findings regarding the existence of an identifiable class, commonality, typicality, and the

propriety of granting class certification under Civ.R. 23(B)(2) and (B)(3).

{¶ 11} The purpose of a class action is to facilitate adjudication of disputes involving common issues between multiple parties in a single action. *Augustus v. Progressive Corp.*, 2003-Ohio-296, ¶ 14 (8th Dist.). "[T]he representative of the putative class is required to affirmatively demonstrate that each requirement of Civ.R. 23 has been satisfied." *Cullen v. State Farm Mut. Auto. Ins. Co.*, 2013-Ohio-4733, ¶ 2.

{¶ 12} Seven prerequisites must be met to certify a class action under Civ.R. 23: (1) an identifiable and unambiguous class must exist; (2) the named representatives of the class must be class members; (3) the class must be so numerous that joinder of all members of the class is impractical; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representative parties must be typical of the claims and defenses of the members of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three requirements of Civ.R. 23(B) must be satisfied. *Stammco, L.L.C. v. United Tel. Co. of Ohio*, 2013-Ohio-3019, ¶ 19.

{¶ 13} As to the seventh prerequisite and as applicable here, Civ.R. 23(B) requires that the court make a finding that

> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

{¶ 14} A trial court has broad discretion in determining whether to certify a class and its determination will not be disturbed absent an abuse of discretion. *Id.* at ¶ 25.

However, such discretion is not unlimited, and the trial court is required to conduct a rigorous analysis when determining whether to certify a class. *Cullen*, 2013-Ohio-4733 at ¶ 16. The trial court may grant certification only after finding that all the requirements of Civ.R. 23 have been satisfied. *Id.*

{¶ 15} With these guiding principles in mind, we turn to appellants' assignments of error. The fourth assignment of error will be addressed out of order.

{¶ 16} Assignment of Error No. 1:

{¶ 17} THE TRIAL COURT ABUSED ITS DISCRETION BY CERTIFYING AN AMBIGUOUS AND FACIALLY OVERBROAD CLASS DEFINITION.

{¶ 18} Appellants argue that the trial court abused its discretion by certifying the class because (1) the class is ambiguous and overbroad as it includes individuals whose claims are barred by applicable statutes of limitations, and (2) the trial court exceeded its authority by considering the merits of appellees' claims in determining whether class certification was appropriate.

{¶ 19} Pursuant to Civ.R. 23, the class must be identifiable and unambiguous. *Warner v. Waste Mgt.*, 36 Ohio St.3d 91, 96 (1988). The definition of the class must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Hamilton v. Ohio Sav. Bank*, 82 Ohio St.3d 67, 71-73, 1998-Ohio-365. Thus, the class definition must be precise enough to permit identification within a reasonable effort. *Id.*

{¶ 20} Noting that the class definition includes individuals who have entered into Contracts since August 11, 2016, appellants argue that the class was improperly certified because it includes individuals whose claims are barred by various applicable statutes of limitations. Appellants point out that the statutes of limitations for landlord-tenant claims and Ohio Consumer Sales Practices Act claims are two years, and that the statute of

limitations for TILA claims is one or three years. Appellants argue the trial court abused its discretion by failing to distinguish between the limitations periods for the various claims and including class members no longer allowed to sue for certain claims as of August 11, 2020, the day the complaint was filed.

{¶ 21} In support of their argument, appellants cite a decision from the Seventh District Court of Appeals for the proposition that "a class definition including claims barred by the statute of limitations is not an 'unambiguous identifiable class' that can be certified." *Unifund CCR Partners v. Young*, 2013-Ohio-4322 (7th Dist.). However, this case differs from *Unifund*. First, unlike *Unifund*, this case does not involve a single representative plaintiff asserting only a time-barred claim. Appellants do not contend that any of the representative appellees have asserted time-barred claims. Second, appellants only assert that some of the Ohio Consumer Sales Practices Act, landlord-tenant, and TILA claims would be time-barred. However, appellees' complaint asserts several other causes of action, not all of which would have been time-barred by August 11, 2020.

{¶ 22} Furthermore, the Ohio Supreme Court has held that a statute of limitations is not a reason to deny certification when some, but not all, class members' claims may be time-barred. "The focus at this stage is on how the class is defined. The test is whether the means is specified at the time of certification to determine whether a particular individual is a member of the class" under Civ.R. 23(A). *Hamilton*, 82 Ohio St.3d at 73. "The question as to whether there are differing factual and legal issues does not enter into the analysis until the court begins to consider the Civ.R. 23(B)(3) requirement of predominance and superiority." *Id.* Subsequently, while addressing Civ.R. 23(B)(3), the supreme court held, "'That a statute of limitations may bar the claims of some, but not all, class members does not compel a finding that individual issues predominate over common ones. . . . Rather, as long as there is a sufficient nucleus of common issues,

- 9 -

differences in the application of a statute of limitations to individual class members will not preclude certification under Rule 23(b)(3).'" *Id.* at 84, quoting 5 Moore, *Federal Practice*, § 23.46[3], at Paragraphs 23-210 to 23-211 (3d Ed. 1997). The Eighth District Court of Appeals has likewise held that "'possible differences in the application of a statute of limitations to individual class members, including the named plaintiffs, does not preclude certification of a class action so long as the necessary commonality and, in a 23(b)(3) class action, predominance, are otherwise present.'" *Westgate Ford Truck Sales, Inc. v. Ford Motor Co.*, 2007-Ohio-4013, ¶ 97 (8th Dist.), quoting *In re Energy Systems Equip. Leasing Sec. Litigation*, 642 F. Supp. 718 (E.D.N.Y. 1986). We therefore find no merit to appellants' statute of limitations argument.

**{¶ 23}** Appellants also argue that the trial court exceeded its authority by considering the merits of appellees' claims in determining whether class certification was appropriate.

**{¶ 24}** As pertinent here, the trial court defined the class as "All persons who entered into a 'Rent-to-Own' or 'Lease with Option to Buy' agreement with any Defendant to rent and/or purchase of residential real property in Ohio . . . . These contracts are best described as seller financed residential mortgage agreements but the sellers retain the right of residential landlord to evict for non payment." Appellants claim the trial court "made a premature merits determination amounting to an improper fail-safe class" by defining the class to include members having seller-financed residential mortgage agreements where the nature of the Contracts is an unresolved merits issue, and by repeatedly making "adverse merits determinations" throughout the certification process. Such alleged determinations include "anyone who signed such an agreement is a member of the class of persons damaged by the actions and illegal practices of [Thomas] Partin and his organizations," "all the members of the class appear to be damaged by the

illegal actions of the Defendants," and "[the Contracts] appear to be written by someone with no regard to Ohio law and who desires to find a way around the law without regard to the rights of those affected by the documents."  The trial court made the first two statements when overruling appellants' objections to the magistrate's decision regarding the lack of an identifiable class and failure to establish typicality.

{¶ 25} "Class action certification does not go to the merits of the action."  *Ojalvo v. Ohio State Univ. Bd. of Trustees*, 12 Ohio St.3d 230, 233 (1984).  "However, deciding whether a claimant meets the burden for class certification pursuant to Civ.R. 23 requires the court to consider what will have to be proved at trial and whether those matters can be presented by common proof."  *Cullen*, 2013-Ohio-4733 at ¶ 17.  Thus, at the certification stage in a class-action lawsuit, a trial court's rigorous analysis may include probing the underlying merits of the plaintiff's claim, but only for the purpose of determining whether the plaintiff has satisfied the prerequisites of Civ.R. 23.  *Stammco*, 2013-Ohio-3019 at ¶ 44.  "A fail safe class definition is one in which the putative class is defined by reference to the merits of the claim."  *Id.* at ¶ 8, fn. 2.  "It requires a court to rule on the merits of the claim at the class certification stage in order to tell who was included in the class."  *Id.*  "Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment."  *Id.*

{¶ 26} Notwithstanding the characterization of the Contracts in the class definition, the class consists of those individuals who entered into RTO or LWO agreements with appellants during the specified time frame.  All appellees and prospective class members entered into RTOs or LWOs and any merits determination on the nature of the Contracts will not affect class membership.  Regardless of how the Contracts are ultimately characterized, the class definition does not create a "fail-safe" class.  Likewise, and

notwithstanding the trial court's inartful reference to the illegality of appellants' actions and practices, the court's statements in overruling appellants' objections do not create a "fail-safe" class. Those statements are not part of the class definition and the class definition is not based on the resolution of the merits of the case.

{¶ 27} Furthermore, the characterization of the Contracts as "seller financed mortgage agreements" is supported by the record, and specifically by Steve Partin's testimony during his deposition and the class certification hearing. Steve Partin testified that appellants consider themselves as the seller in these transactions and that appellants finance the sales. In any event, the "seller financed mortgage agreements" in the class definition is surplusage. The gist of the class definition and its essential attribute is individuals who entered into RTOs and LWOs with appellants during the requisite time frame.

{¶ 28} Finally, the trial court's statement that the Contracts were written by someone without regard to Ohio law is not included in the class definition and played no part in the class certification. The statement was made in an entry denying appellants' motion for judgment on the pleadings as to certain causes of action, and not during the court's consideration of class certification.

{¶ 29} In light of the foregoing, the first assignment of error is overruled.

{¶ 30} Assignment of Error No. 4:

{¶ 31} THE TRIAL COURT ABUSED ITS DISCRETION BY CERTIFYING A CLASS UNDER AN INCORRECT STANDARD FOR "TYPICALITY."

{¶ 32} Civ.R. 23(A)(3) provides that one or more members of a class may sue as representative parties on behalf of all members "only if . . . the claims or defenses of the representative parties are typical of the claims or defenses of the class." Appellants challenge the trial court's typicality finding, arguing the trial court merely assumed

typicality by presuming the representative plaintiffs sustained damages without regard to whether the damages arose from the same claims.

**{¶ 33}** "[T]he requirement of typicality serves the purpose of protecting absent class members and promoting the economy of class action by ensuring that the interests of the named plaintiffs are substantially aligned with those of the class." *Baughman v. State Farm Mut. Auto. Ins. Co.*, 88 Ohio St.3d 480, 484, 2000-Ohio-397. "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Id.* at 485.

**{¶ 34}** "Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Id.* "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims." *Id.* Furthermore, typicality does not require that the class representatives possess claims or defenses that are identical to those of the putative class members. *Barrow v. New Miami*, 2016-Ohio-340, ¶ 32 (12th Dist.). Rather, where a class representative's interests are substantially aligned or not in express conflict with those of the class, typicality is satisfied. *Id.*

**{¶ 35}** Citing *Baughman*, the magistrate found that the typicality requirement was satisfied because the claims of appellees and the class members are based upon the same Contracts and appellants' course of conduct. Specifically, the magistrate found that "Defendants' acts in entering into and administering the Contracts as described above were unquestionably 'directed at' and 'affected both the named Plaintiffs and class sought to be represented' in the same manner." Appellants objected to the typicality finding on

the ground appellees "have very diverse situations," with each having his or her own unique story to tell. The trial court adopted the magistrate's decision and overruled the objection, finding that "each member of the class does not have to have the exact same claim as all of the other members of the class. All the members of the class appear to be damaged by the illegal actions of the Defendants. The Court is at a loss to understand how that is not typical."

{¶ 36} The trial court did not abuse its discretion by finding that the class satisfied the typicality requirement under Civ.R. 23(A)(3). The claims of appellees and the prospective class members arise from the same practice or course of conduct—appellants' practice of financing the purchase of a home by appellees and prospective class members by entering into substantially similar Contracts. Appellants' conduct was directed at or affected both appellees and the class sought to be represented. The claims of appellees and the prospective class members are based on the same legal theories—violations of Ohio's Land Installment Contract law, Ohio's Landlord-Tenant law, Ohio's Consumer Sales Practices Act, Ohio's Residential Mortgage Lending Act, and TILA and HOEPA.

{¶ 37} The fourth assignment of error is overruled.

{¶ 38} Assignment of Error No. 2:

{¶ 39} THE TRIAL COURT ABUSED ITS DISCRETION BY CERTIFYING A CLASS UNDER CIV.R. 23(B)(3).

{¶ 40} Appellants argue the trial court abused its discretion by certifying the class under Civ.R. 23(B)(3), raising three issues for review.

{¶ 41} Certification of a class under Civ.R. 23(B)(3) requires the trial court to make two findings: first, "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and, second, "that a

class action is superior to other available methods for the fair and efficient adjudication of the controversy." This inquiry requires a court to balance questions common among class members with any dissimilarities between them, and if the court is satisfied that common questions predominate, it then should "consider whether any alternative methods exist for resolving the controversy and whether the class action method is in fact superior." *Cullen*, 2013-Ohio-4733 at ¶ 29.

**{¶ 42}** In their first and second issues for review, appellants argue the trial court erred by finding that common questions of fact predominate over questions affecting only individual members. Appellants assert that based upon the trial court's earlier observation that the Contracts are ambiguous regarding whether they are land installment contracts, leases, or mortgages, resolution of that ambiguity will require "an individualized case-by-case analysis into the parties' intent at the time of contracting," thus defeating predominance.[1] Appellants further assert that individual factual issues predominate because most of appellees' claims relate to "ordinary landlord-tenant claims: failure to repair, fitness or habitability of the property, undisclosed latent defects, [and] unreimbursed improvements to the property," thereby requiring "an inherently individualized factual inquiry into pre-contractual negotiations" and necessarily resulting in varying damage awards. This assertion assumes that the Contracts are determined to be residential leases subject to R.C. Chapter 5321.

**{¶ 43}** The trial court found that the predominance requirement was met because

---

1. Early in the proceedings below, appellants moved for judgment on the pleadings as to appellees' first, fifth, sixth, and seventh causes of action, arguing that the Contracts were not land installment contracts. On May 6, 2021, the trial court denied the motion, stating, "It is abundantly clear that the documents in question are poorly drafted and ambiguous. They appear to be written by someone with no regard to Ohio law and who desires to find a way around the law without regard to the rights of those affected by the documents." The trial court further stated, "The Plaintiffs, after completing the discovery process, will have to choose which theory they wish to proceed upon at trial, but it is premature to require that election before discovery."

appellees' class claims are "subject to generalized proof" without need to examine each class member's individual situation and are "amenable to class wide determinations." That is, the trial court found that considering the identical provisions of the Contracts and appellants' actions and practices, it could determine on a class wide basis whether the statutory definitions and provisions set forth in federal statutes (TILA and HOEPA) and Ohio's Land Installment Contract statute, Ohio's Landlord-Tenant statute, Ohio's Consumer Sales Practices statute, and Ohio's Consumer Protection statute apply to the Contracts. For example, the trial court found that "Plaintiffs' claim that each transaction between Defendants and each class member violates the provisions in R.C. 1349.41 will hinge upon a determination that these transactions constitute a mortgage and whether each Defendant is a 'lender' as defined by that statute. Once again, this would be a class-wide determination."

{¶ 44} To establish predominance under Civ.R. 23(B)(3), "it is not sufficient that common questions [of law or fact] merely exist; rather, the common questions must represent a significant aspect of the case and they must be able to be resolved for all members of the class in a single adjudication." *Howland v. Purdue Pharma L.P.*, 2004-Ohio-6552, ¶ 19. "To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Cullen*, 2013-Ohio-4733 at ¶ 30. "[A] claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position." *Baughman*, 88 Ohio St.3d at 489.

{¶ 45} The trial court did not err by finding that the predominance requirement was met under Civ.R. 23(B)(3). This case involves two types of contracts written and used by

appellants over the years, RTOs and LWOs.  Steve Partin's testimony indicates that LWOs were typically used before 2015 but were eventually phased out and replaced by RTOs, and that as years passed and appellants "evolved," so did the terminology used in the Contracts.  Nonetheless, Partin testified that the parties' obligations were the same under the RTOs and LWOs, that the Contracts contain identical provisions and are financed by appellants, and that the purpose of the Contracts was to sell residential property to individuals who were unable to obtain conventional financing and who could not otherwise afford to buy residential property.  Appellees' testimony and depositions strongly indicate that appellees signed the Contracts believing and intending to purchase a property from appellants whether the Contracts were RTOs or LWOs.  In other words, the Contracts and surrounding circumstances indicate the parties intended the Contracts to be purchase agreements.

{¶ 46} Appellants claim, without identifying them, that the Contracts "have material textual differences affecting payment structure and the obligations of the parties." However, regardless of the terminology used in the Contracts, all Contracts contain identical provisions and share identical servicing: (1) an initial upfront payment representing 7 percent of the purchase price, (2) a monthly payment for the purchase of the property that includes real estate taxes and insurance, (3) the balance of the purchase price being financed by appellants over a 30-year term at an annual rate of 12 percent, (4) an insurance policy issued solely in appellants' names and only covering appellants' interest in the property, (5) appellants' failure to maintain a separate escrow account for appellees' and class members' payments for real estate tax and insurance, (6) appellants' failure to record the Contracts or any memoranda thereof with the county recorder, (7) responsibility for all repairs and maintenance of the property lying solely with appellees and prospective class members, and appellants assuming no responsibilities of a

residential landlord under R.C. Chapter 5321, (8) payments that are seven days in arrears being subject to a $50 late fee, and (9) regardless of when the deed is transferrable (theoretically after five years for older LWOs and upon full payment of the purchase price for a RTO and newer LWOs), appellants' authority to terminate the Contracts for non-payment of any financial obligation at any time during the term of the Contracts and evict appellees and class members, in which case appellants keep all payments already made by appellees and class members and any equity appellees and class members may have in the property.

{¶ 47} The Ohio Supreme Court has recognized that "a wide variety of claims may be established by common proof" where the claims arise from standardized forms, identical or similar form documents, or routinized procedures and practices, notwithstanding the need to prove reliance. *Cope v. Metro. Life Ins. Co.*, 82 Ohio St.3d 426, 430, 1998-Ohio-405; *Hamilton*, 82 Ohio St.3d at 84. Likewise, "claims based on an underlying scheme are particularly subject to common proof." *Cope* at 431. "It is the underlying scheme which demands attention. Each plaintiff is similarly situated with respect to it." *Id.* at 432. The gravamen of appellees' complaint is that appellants engaged in a scheme to collect payments from individuals who could not obtain a conventional loan to purchase a home by offering contracts whose hybrid provisions solely benefited appellants and allegedly circumvented statutory and regulatory disclosure requirements. The ambiguity as to the actual nature of the Contracts and the attendant legal obligations of the parties applies across the entire class. In that sense, resolving that ambiguity is the predominate question.

{¶ 48} While individual class members' damages may involve separate proof, this does not defeat predominance of common factual questions as supporting class certification. "When 'one or more of the central issues in the action are common to the

class and can be said to predominate, the action may be considered proper . . . even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Black v. Girard*, 2020-Ohio-1563, ¶ 28 (11th Dist.), quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). "The inquiry into whether there is damage-in-fact is distinct from the inquiry into actual damages[.]" *Felix v. Ganley Chevrolet, Inc.*, 2015-Ohio-3430, ¶ 34. "'When evaluating damages in the predominance inquiry, '[t]he amount of damages is invariably an individual question and does not defeat class action treatment.'" *Id.*, quoting *Gonzales v. Comcast Corp.*, 2012 U.S. Dist. LEXIS 196 (E.D. Cal. Jan.3, 2012), quoting *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir.1975). Furthermore, "[T]he fact that a defense may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones." *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 460 (6th Cir. 2020). "[W]hen adjudication of questions of liability common to the class will achieve economies of time and expense, the predominance standard is generally satisfied even if damages are not provable in the aggregate." *Id.*

**{¶ 49}** In other words, the question of whether class members have suffered damage-in-fact may be resolved in a class action even though the quantification of the damages must be resolved individually in separate proceedings. Here, at the class-certification stage, appellees adduced common evidence suggesting that all class members suffered an injury-in-fact (notwithstanding questions regarding the individual damages calculations for each class member), thereby showing predominance under Civ.R. 23(B)(3). *See Felix.*

**{¶ 50}** In their third issue for review, appellants challenge the trial court's finding that a class action is the superior method of adjudication. Appellants assert that the action "will inevitably involve a series of mini-trials to determine liability and damages."

**{¶ 51}** Civ.R. 23(B)(3)'s superiority requirement tests whether "class wide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (3d Cir. 1996). The key is whether the efficiency and economy of common adjudication outweigh the difficulties and complexity of individual treatment of class members' claims. *Warner*, 36 Ohio St.3d at 96.

**{¶ 52}** The trial court found that a class action is superior to individual actions because (1) it will achieve economies of time, effort, and expenses, and prevent the risk of inconsistent judgments, and (2) although the damage amount for appellees and class members will vary on some of the claims, the method of calculating damages on many of the claims is constant and can be determined on the basis of appellants' detailed payment records for each appellee and class member.

**{¶ 53}** The trial court did not err by finding that a class action is superior to individual actions. Civ.R. 23(B)(3) is designed to "enabl[e] numerous persons who have small claims that might not be worth litigating in individual actions to combine their resources and bring an action to vindicate their collective rights." *Hamilton*, 82 Ohio St.3d at 80. "'The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.'" *Id.*, quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997).

**{¶ 54}** Here, the questions of law and fact which have already been shown to be common to each respective subclass arise from Contracts with identical or materially similar provisions. The gravamen of every complaint within each subclass is the same and relates to appellants' use of standardized procedures and practices. Class

certification will promote the uniform interpretation of the identical or materially similar Contracts by determining the nature of the Contracts and the attendant legal obligations of the parties, will eliminate any potential danger of varying or inconsistent judgments while providing a forum for the vindication of rights of groups of people who individually would be without effective strength to litigate their claims, and will more efficiently adjudicate the individual class members' claims. Furthermore, disparity in damages among class members is not a basis for denying class certification. *Hamilton* at 80, citing *Ojalvo*, 12 Ohio St.3d at 232.

**{¶ 55}** In light of the foregoing, the trial court did not abuse its discretion by certifying the class action under Civ.R. 23(B)(3). The second assignment of error is overruled.

**{¶ 56}** Assignment of Error No. 3:

**{¶ 57}** THE TRIAL COURT ABUSED ITS DISCRETION BY CERTIFYING A CLASS WITH INADEQUATE COHERENCE BETWEEN ITS MEMBERS UNDER CIV.R. 23(B)(2).

**{¶ 58}** Civ.R. 23(B)(2) "entails two requirements: (1) the action must seek primarily injunctive relief, and (2) the class must be cohesive." *Wilson v. Brush Wellman, Inc.*, 2004-Ohio-5847, ¶ 13. Claims for individualized relief are not compatible with Civ.R. 23(B)(2), because the relief sought must affect the entire class at once. *Cullen*, 2013-Ohio-4733 at ¶ 21. Thus, certification depends on "what type of relief is primarily sought, so where the injunctive relief is merely incidental to the primary claim for money damages, Civ.R. 23(B)(2) certification is inappropriate." *Id.* at ¶ 22.

**{¶ 59}** Appellants argue the trial court abused its discretion by certifying the class under Civ.R. 23(B)(2) because (1) appellees do not primarily seek injunctive relief, and (2) the trial court failed to address the cohesiveness of the class. In support of their

argument that appellees do not primarily seek injunctive relief, appellants merely point out appellees' allegation they suffered damages of more than $25,000.

**{¶ 60}** We first address the trial court's failure to determine whether the class was cohesive. The record shows that the magistrate failed to address the cohesiveness of the class in his analysis under Civ.R. 23(B)(2). Although appellants filed objections to the magistrate's decision granting appellees' motion for class certification, they did not specifically object to the magistrate's failure to address the cohesiveness of the class.

**{¶ 61}** Civ.R. 53(D)(3) governs the procedure for objecting to a magistrate's decision. The rule requires a party to make timely, specific objections in writing to the trial court, identifying any error of fact or law in the magistrate's decision. *Lineback v. Lineback*, 2017-Ohio-5673, ¶ 15 (12th Dist.). A failure to file specific objections is treated the same as a failure to file any objections. *Ashley v. Kevin O'Brien & Assocs. Co., L.P.A.*, 2023-Ohio-4677, ¶ 34 (10th Dist.). "Except for a claim of plain error, a party is prohibited from assigning as error on appeal the trial court's adoption of any finding of fact or legal conclusion, unless that party has objected to that finding or conclusion." *Lineback* at ¶ 15; Civ.R. 53(D)(3)(b)(iv).

**{¶ 62}** Because appellants did not file an objection in accordance with Civ.R. 53(D)(3)(b), they have waived all but plain error on appeal. *Mallikarjunaiah v. Shankar*, 2020-Ohio-4508, ¶ 22 (12th Dist.). Plain error is only found in exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself. *Id.*; *Goldfuss v. Davidson*, 1997-Ohio-401, syllabus. Appellants do not claim plain error on appeal.

**{¶ 63}** Upon reviewing the record, we find that the trial court's failure to address the cohesiveness of the class does not constitute plain error because the record indicates

the class is cohesive. Both subclasses complain of conduct and practice perpetrated by appellants against the class as a whole under the Contracts. The propriety of certification under Civ.R. 23(B)(2) thus turns upon the type of relief sought.

{¶ 64} By its own terms, Civ.R. 23(B)(2) does not require both remedies of injunctive and declaratory relief. Appellees sought declaratory and injunctive relief as to the nature of the Contracts and the attendant legal obligations of the parties to the Contracts. Specifically, appellees sought declarations that appellants violated Ohio's Land Installment Contract Law, including its provisions protecting the right of vendees, as well as their obligations as landlords under R.C. 5321.04 and 5321.13. Appellees sought a permanent injunction prohibiting appellants from collecting rent payments without assuming their obligations as landlords and monthly payments without recording the Contracts. Appellees further sought declaratory and injunctive relief regarding appellants' violations of their obligations as mortgage lender and mortgage broker under R.C. Chapter 1322; appellants' unconscionable acts or practices regarding real estate mortgage under Ohio Consumer Sales Practices Act; and appellants' deceptive and unconscionable practice of charging and collecting insurance premiums without providing an actual insurance policy in violation of Ohio Consumer Sales Practices Act.

{¶ 65} Although appellees also sought damages in conjunction with the legal theories above, the declaratory and injunctive relief sought by appellees does not become merely incidental to their claim for money damages. The class does not primarily seek money damages; rather, their primary object is to terminate appellants' practice of financing individuals' purchase of homes under the Contracts used by appellants which, the record shows, results in an ambiguous legal status of all class members. "The fact that money damages are also sought in addition to injunctive relief does not defeat certification under Civ.R. 23(B)(2)." *Hamilton*, 82 Ohio St.3d at 86.

**{¶ 66}** Both subclasses—individuals still operating under the Contracts and individuals who, for various reasons, moved out of the home they were trying to purchase from appellants—will benefit from the requested declaratory relief. Likewise, injunctive relief is an important aspect of appellees' claims. Appellants argued below that the subclass of individuals no longer operating under the Contracts would make certification for that subclass inappropriate under Civ.R. 23(B)(2) because they would not benefit from injunctive or declaratory relief. However, the Ohio Supreme Court has advocated for certification of incidental aspects of a case under Civ.R. 23(B)(2):

> If the Rule 23(a) prerequisites have been met and injunctive or declaratory relief has been requested, the action usually should be allowed to proceed under subdivision (b)(2). Those aspects of the case not falling within Rule 23(b)(2) should be treated as incidental. Indeed, quite commonly they will fall within Rule 23(b)(1) or Rule 23(b)(3) and may be heard on a class basis under one of those subdivisions. Even when this is not the case, the action should not be dismissed. The court has the power under subdivision (c)(4)(A), which permits an action to be brought under Rule 23 'with respect to particular issues,' to confine the class action aspects of a case to those issues pertaining to the injunction and to allow damage issues to be tried separately.

*Hamilton* at 87, quoting 7A Wright, Miller & Kane, *Federal Practice and Procedure*, § 1775, at 470 (2d Ed. 1986).

**{¶ 67}** In light of the foregoing, the trial court did not abuse its discretion by certifying the class under Civ.R. 23(B)(2). The third assignment of error is overruled.

**{¶ 68}** Judgment affirmed.

PIPER, P.J., and S. POWELL, J., concur.